UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────

JOHN L. BRYANT,

       Petitioner,

      -v-                           08-CV-6103(MAT)
                                              **ORDER**

JOHN LEMPKE,

       Respondent.
────────────────────────────

## I.   Introduction

*Pro se* petitioner John L. Bryant ("petitioner") has brought a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Supreme Court for Murder in the Second Degree (N.Y. Penal L. § 125.25(1)), Criminal Contempt in the First Degree (N.Y. Penal L. § 215.51(b)(5)), Resisting Arrest (N.Y. Penal L. § 205.30), and two counts of Assault in the Third Degree (N.Y. Penal L. § 120.00(1)). Following his conviction by jury trial before Justice David D. Egan, petitioner was sentenced to an aggregate term of imprisonment of twenty-six and one-third years to life.

## II. Factual Background and Procedural History

### A.   Trial and Conviction

In December, 2001, petitioner struck his wife, Gloria Jean Bryant ("the victim"), 27 times with a wooden cane, causing her

death. T. 896-870.[1] Following the attack, he wrapped his wife's body in a bedspread and placed it under a boat tarp in his garage. T. 620-621, 863. Bloodstains and spatters were found at various locations in the house, in addition to a mop, scrub brush, sponges, and rags near some of the stains. T. 379, 607-616, 676-686, 743-795. In addition, petitioner dug a hole in the ground where he planned on burying the body. T. 1084-1085, 1091.

The charges also encompassed two prior beatings of the victim by petitioner on September 9 and November 19 of 2001.

In the early morning hours of September 9, 2001, the victim returned home late from Binky's Bar, the tavern she owned in the City of Rochester. T. 356. The following day at approximately noon, petitioner entered the bar and informed the victim's son, Paul Travis ("Travis"), that the couple had been fighting. Travis then went to his mother's house, which was not far from Binky's, to check on her. T. 357-358. There, he saw the victim lying in her bed with the covers over her head, crying and appearing to be in "a lot of pain." T. 359, 361. She gestured to her son with hand movements when he asked her what was wrong. She pointed to her head, rib cage, and groin area. T. 360. Travis called Rochester Police, and Officer Brian Phillips ("Phillips") responded to the call. T. 432. Although an order of protection was issued as a result of that

---

[1] Citations to "T.__" refer to the trial transcript; citations to "S.__" refer to the sentencing transcript.

incident, petitioner returned to the victim's residence not long after. T.1053.

Approximately two months later, on November 19, 2001, the victim again returned home late from working at Binky's. T. 356. Sometime around 3:00am, a neighbor, Shirlee Broadhurst ("Broadhurst"), was awakened by screams. She went to her window and saw petitioner beating the victim in the street. Broadhurst observed petitioner throwing the victim on the ground, kicking her, and dragging her back toward the house as the victim tried to escape. Broadhurst heard the victim screaming for help, and yelling that "he is going to kill me." T. 474. Broadhurst yelled to petitioner to stop, and that she had called the police, but petitioner continued to kick his wife at least "five or six times" and punch her "five or six times" all over her body. The beating stopped just before police arrived. T. 475-478. When Rochester Police arrived, the victim was "wandering around" and "crying hysterically" appearing to be dazed and had a large bruise on her head. T. 501-502.

Petitioner testified on his own behalf at trial. He admitted killing his wife, but claimed that he had done so in self defense after she attacked him with a knife. T. 1072-1079. Specifically, petitioner testified that the victim came home around midnight and demanded money from the petitioner. When petitioner refused, the victim swung at petitioner with a six-inch folding knife and

threatened to kill him. During the altercation, petitioner struck the victim multiple times in the hands and the head, breaking the cane. T. 1070-1080. Petitioner supported his justification defense by testifying that he was disabled as a result of Hepatitis C and various bodily injuries, for which he took multiple medications. T. 1046, 1074.

The jury found petitioner guilty of all counts. He was subsequently sentenced to twenty five years to life imprisonment for the murder conviction, with sentences on the lesser charges to run concurrent. S. 14-15.

**B. Direct Appeal**

Through counsel, petitioner filed a brief in the Appellate Division, Fourth Department, raising three issues for appeal: (1) the autopsy report and victim's statement to police denied petitioner's right to confrontation; (2) the victim's statement to police was improperly admitted as an excited utterance; and (3) the assault convictions were not supported by legally sufficient evidence. See Respondent's Appendix ("Appx.") B. The Appellate Division unanimously affirmed the judgment of conviction. People v. Bryant, 27 A.D.3d (4th Dept. 2006); lv. denied, 7 N.Y.3d 753 (2006).

**C. Post-Conviction Relief**

On June 13, 2007, petitioner filed a motion for writ of *error coram nobis* in the Appellate Division, alleging that his appellate

counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on appeal. Appx. I. The Appellate Division denied petitioner's motion. People v. Bryant, 43 A.D.3d 1454 (4th Dept. 2007); lv. denied, 9 N.Y.3d 1004 (2007).

On April 28, 2008, petitioner filed a motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. L. § 440.10 in Monroe County Supreme Court, alleging, *inter alia*, that he received ineffective assistance of trial counsel. See 440.10 Mot. dated 4/28/2008 (Dkt. #8). The state court rejected petitioner's contention on the merits. See Decision & Order, Ind. No. 846/01 dated 12/10/2008 at 9-11; lv. denied, App. Div. Decision, Docket No. 09-00258, dated 4/15/2009.

**D. Habeas Corpus Proceedings**

Petitioner filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 5, 2008 (Dkt. #1), raising five grounds for relief: (1) violation of petitioner's right to confrontation; (2) improperly introduced hearsay evidence at trial; (3) legally insufficient evidence to support the conviction for assault; (4) ineffective assistance of appellate counsel; and (5) the *error coram nobis* procedure in New York violated petitioner's due process rights. Petition ("Pet.") Attach., ¶ 14.

After the respondent submitted its answering papers (Dkt. #4), petitioner moved to: (1) extend his time to file a reply brief to respondent's answer; (2) stay the habeas proceedings to exhaust

state court remedies; and (3) amend the original petition for writ of habeas corpus (Dkt. #5).

Petitioner's motion (Dkt. #5) was granted in part. This Court (M.J. Bianchini) granted petitioner leave to amend his petition to add the off-the-record ineffective assistance of trial counsel claims contained in his § 440.10 motion regarding his attorney's failure to consult expert witnesses and present a defense of extreme emotional disturbance. See Decision and Order, No. 08-CV-6103(CJS)(VEB) dated 9/30/2009 at 2 (Dkt. #9). No further papers were submitted by either party.

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state

court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial

incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

## 2.    Exhaustion Requirement and Procedural Default

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.,</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.,</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir. 1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney</u>

General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been fairly presented to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977).

### 3.    Adequate and Independent State Ground Doctrine

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly

invokes a state procedural rule as a separate basis for its decision).

**B.   Merits of the Petition**

    **1.   Confrontation Clause Violation (Grounds One and Two)**

Petitioner first contends that the autopsy report and the victim's statements to a police officer on September 9, 2001 were introduced into evidence in violation of his right to confront witnesses against him. Pet., Attach., ¶ 14. The Appellate Division held,

> Defendant failed to preserve for our review his contention that Supreme Court denied him his right to confront the witnesses against him by admitting in evidence the autopsy report and the statements made by the victim to a police officer on September 9, 2001. In any event, we conclude that defendant's contention lacks merit.

Bryant, 27 A.D.3d at 1124 (citing People v. Kello, 96 N.Y.2d 740, 743-44 (2001) (holding that petitioner's objection made on the basis of a trial evidence error is distinct from a Confrontation Clause objection and, thus, a hearsay objection is not sufficient to preserve constitutional claims)).

    **a.   Autopsy Report**

At the time of petitioner's trial, the physician that conducted the victim's autopsy was unavailable to testify. The prosecution thus called the deputy director of the Medical Examiner's office to testify concerning the autopsy. Defense

counsel objected to the witness, but acknowledged that the autopsy report was admissible as a business record. The witness then testified concerning the report, which was redacted to exclude the examining physician's opinions as to the manner and cause of death. T. 861.

In rejecting the petitioner's claim, the Appellate Division found that petitioner had not preserved his claim that the admission of the autopsy report violated his right to confrontation.[2] Indeed, the record indicates that there was no objection on Sixth Amendment grounds. Rather, defense counsel stated, "I know that the autopsy report itself is a business record and this witness can testify to the business record. I just prefer having the doctor who performed the autopsy itself testify." T. 857.

Federal habeas courts in this Circuit have recognized the contemporaneous objection rule as an independent and adequate state procedural bar for Confrontation Clause objections. See Stewart v. Greene, No. 05-Civ.-0566, 2009 WL 4030833, at *2 (S.D.N.Y. Nov. 19, 2009). Blackman v. Ercole, No. 06-CV-855, 2009 WL 4891767 at *4 (E.D.N.Y. Dec. 17, 2009)("Applying the Cotto guideposts, the contemporaneous objection rule is consistently and regularly

_____

[2] The Appellate Division alternatively rejected this argument on the merits. For purposes of habeas review, however, the claim remains procedurally barred. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

followed for Confrontation Clause objections and, thus, provides an independent state procedural ground adequate to support the state court's judgment."). Moreover, it is well-settled law in New York that the invocation of a hearsay objection is insufficient to preserve a Confrontation Clause violation. <u>Canemo v. Dennison</u>, No. 06 Civ.2078, 2010 WL 1685384 at *4 (S.D.N.Y. April 23, 2010) (citing <u>Kello</u>, 96 N.Y.2d at 743-44 and collecting cases). Thus, insofar as counsel registered an objection at trial, that objection was insufficient to preserve petitioner's constitutional claim.

Because petitioner's claim is procedurally defaulted, he must make a showing of cause for the default and prejudice resulting therefrom, or establish that a miscarriage of justice would occur if the Court does not review his Confrontation Clause claim. <u>See</u> <u>Coleman</u>, 501 U.S. at 750. Petitioner has alleged neither exception. Accordingly, this claim is dismissed.

### b. The Victim's Statements on September 9, 2001

On September 9, 2001, Officer Brian Phillips ("Phillips") responded to a call of a suspected assault or "suspicious condition" at the victim's house. T. 433. He arrived shortly after 12:20pm, and, after speaking briefly with the victim's son and his cousin, the officer observed the victim curled in a fetal position on the bed in her darkened bedroom. T. 434. The victim had difficulty breathing, and appeared to be in "an extreme amount of pain." T. 437-438. When Phillips asked the victim what happened,

she told him that her husband was angry, dragged her around by the hair, and beat her. T. 446-447. Phillips' testimony was admitted as an excited utterance[3] without objection on confrontation grounds. T. 444-445.

As was the case with the autopsy report, the issue was not preserved under state law for review on appeal in the Appellate Division, because no objection was made based upon a Confrontation Clause violation. It is therefore procedurally barred from habeas review pursuant to the adequate and independent state ground doctrine. Petitioner has not alleged cause and prejudice, or that he is actually innocent to establish a fundamental miscarriage of justice. See <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002). His confrontation clause claim on this ground is therefore dismissed.

### i. Erroneous Evidentiary Ruling-Due Process Argument

Petitioner also seeks habeas relief based on state evidentiary error. Specifically, petitioner claims that the victim's statement to police on September 9, 2001, was improperly admitted as an excited utterance. Pet., Attach., ¶ 14. The Appellate Division concluded that the state court did not err in admitting the statements under the excited utterance exception to the hearsay

---

[3] "An out-of-court statement is properly admissible under the excited utterance exception when made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication", with the statement being "spontaneous and trustworthy". <u>People v. Johnson</u>, 1 N.Y.3d 302, 306 (2003)

rule: "the court properly determined that 'at the time the utterance[s were] made [the victim] was in fact under the stress of excitement caused by an external event sufficient to still . . . her reflective faculties.'" Bryant, 27 A.D.3d at 1126 (quoting People v. Johnson, 1 N.Y.3d 302, 306 (2003)).

Erroneous evidentiary rulings by a state trial court generally do not rise to the level of due process violations upon which a federal court may grant habeas relief. See Jenkins v. Bara, 663 F.Supp. 891, 899 (E.D.N.Y. 1987) (citing, *inter alia*, Lipinski v. New York, 557 F.2d 289, 292 (2d Cir.1977)). "In order for an evidentiary error under state law to constitute a due process violation under the federal Constitution, a petitioner must show 'that the error was so pervasive as to have denied him a fundamentally fair trial.'" Mannino v. Graham, No. 06 Civ. 6371, 2009 WL 2058791, at *4 (E.D.N.Y. July 15, 2009) (quoting Collins v. Scully, 755 F.2d 16, 18 (2d Cir.1985)). Satisfying this standard requires the petitioner to "establish that the evidence was (a) erroneously admitted under New York law and (b) 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Id. (quoting Collins, 755 F.2d at 19).

The respondent has argued that under the facts of the instant case, the statement was properly admitted as an excited utterance. In New York, hearsay statements are admissible as "excited

utterances" when they are "made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication." <u>People v. Johnson</u>, 1 N.Y.3d 302, 306 (2003). The "decisive factor" for determining admissibility is "whether the surrounding circumstances reasonably justify the conclusion that the remarks were not made under the impetus of studied reflection[.]" <u>People v. Edwards,</u> 47 N.Y.2d 493, 497 (1979). Stated another way, an excited utterance occurs "'under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection'-a period which 'is not measured in minutes or seconds but rather is measured by facts.'" <u>Mungo v. Duncan</u>, 393 F.3d 327, 331 (2d Cir.2004) (quoting <u>People v. Cotto</u>, 92 N.Y.2d 68, 78-79 (1998).

The proof at trial established that the victim was in pain from her injuries inflicted by petitioner approximately nine hours prior to her statement to Officer Phillips. The victim's son had initially observed her lying in bed, with her head covered, appearing to be in "a lot of pain." T. 359-361. The victim collapsed after attempting to get out of bed. At that point, the victim's son called 911. <u>Id.</u> When Phillips arrived, the victim was in the fetal position in her bed with the shades drawn. Phillips testified that he observed her body shake, and that when she tried to move, the victim "grimac[ed]" and had difficulty breathing.

T. 434-436. The trial court considered the physical, psychological, and emotional circumstances surrounding the victim's statement, and concluded that she was in a "completely traumatized condition" with no opportunity for studied reflection, thereby admitting the statement as an excited utterance. T 444-445.

The New York Court of Appeals has explicitly rejected a rule regarding definite or fixed time limitation with respect to excited utterances. See People v. Brown, 70 N.Y.2d 513, 520-521 (1987). Rather, "excited utterances made after the event may be admitted if 'not made under the impetus of studied reflection'" because the "psychological and emotional effect of the sudden event may persist and continue to operate with undiminished force for a period of time thereafter." Id. at 521 (citing Edwards, 47 N.Y.2d at 497); see also People v. Brooks, 71 N.Y.2d 877 (1988) (holding that victim's declarations made 2 and ½ hours after a shooting and resulting injuries were nevertheless uttered while he remained under the influence of a startling event and not after a period of reflection or deliberation which might have led him to be untruthful, and thus were properly held to be admissible). New York's highest court has acknowledged that while serious injury may be "a significant factor in determining whether the declarant remains under the stress of a startling event," it has not held that *any* statement made by an injured victim made about the event, however long after the trauma, constitutes an excited utterance

merely because the victim continues to suffer pain. <u>Johnson</u>, 1 N.Y.3d at 307. Rather, the test remains "whether the declarant is capable of studied reflection and therefore incapable of fabrication." <u>Id.</u>

Examined under this body of jurisprudence, it was not error for the trial court to admit the victim's statements regarding the beating. It is clear that the victim was in obvious pain at the time of her statement, and there is no indication that she had taken an opportunity for clear, reflective thought. Rather, she had been lying in bed for several hours, with her first opportunity to speak essentially arising when Officer Phillips inquired as to what happened.

Assuming, *arguendo*, the statements were received in error, petitioner was not deprived of a fair trial. Absent this testimony, there was substantial other evidence pointing to his guilt for the assault and murder of his wife, including the testimony of the petitioner himself, who testified that he killed the victim by beating her with a cane. The autopsy indicated that the victim was killed by being struck approximately 27 times. T.893-896. Bloodstains and cleaning supplies were found in the house by Travis as well as by the police. T. 379, 607-616. 676-686743-795. Petitioner himself admitted at trial that there had been "many" physical confrontations with his wife during their marriage. T. 1109. Indeed, the beating that occurred on November 19, 2001 was

witnessed first-hand by a neighbor, who had called police.  T. 474-788.

Given the overwhelming evidence in the case against petitioner, Phillips' testimony regarding the assault on September 9, 2001, is not so material to Petitioner's guilt as to have had a substantial effect on the verdict.  Therefore, irrespective of whether the trial court correctly applied New York State evidentiary law, this claim does not state a ground for federal habeas relief.

## 2.  Sufficiency of the Evidence (Ground Three)

Petitioner next contends that there was insufficient proof of physical injury to support the conviction of Assault in the Third Degree stemming from the September 9, 2001 beating of the victim. Pet., Attach., ¶ 14. This claim is raised for the first time in the instant petition, and is therefore unexhausted because petitioner did not "fairly present" it to the state courts for review. Daye, 696 F.2d at 191.  This issue was not brought before the state court on direct appeal, and petitioner cannot appeal this claim in the Court of Appeals because he has already made one request for leave to appeal to which he is entitled. See N.Y. Court Rules § 500.20. Collateral review of this is also barred because it could have been raised on direct appeal but was not. C.P.L. § 440.10(2)(c). Thus, any attempt by petitioner to seek state court review pursuant to § 440.10 would be futile. Because a state court would find

petitioner's unexhausted claim procedurally barred from state review, it is deemed exhausted and precluded from habeas review. Grey, 933 F.2d at 120-21.

Petitioner has not demonstrated cause for the procedural default and resulting prejudice, nor has he alleged that he is actually innocent. Accordingly, this aspect of petitioner's legal sufficiency claim is dismissed.

To the extent that petitioner has attempted to challenge the legal sufficiency of the evidence as to the conviction for the November 19, 2001 incident, that claim is also procedurally defaulted because petitioner failed to preserve the claim for direct appeal. Bryant, 27 A.D.3d at 1126.

New York's preservation doctrine, codified in N.Y. Crim. Proc. L. § 470.05(2), requires that a criminal defendant make a timely and specific objection to the alleged error in order to preserve the objection for appellate review. People v. Hawkins, 11 N.Y.3d 484, 492 (2008). "'[E]ven where a motion to dismiss for insufficient evidence [is] made, the preservation requirement compels that the argument be specifically directed at the alleged error.'" Donaldson v. Ercole, No. 06-5781-pr, 2009 WL 82716, at *2 (2d Cir. Jan.14, 2009) (quoting People v. Hines, 97 N.Y.2d 56 (2001) ("[W]e have repeatedly held that an indictment may be dismissed due to insufficient evidence only where the sufficiency issues pursued on appeal were preserved by a motion to dismiss at

trial. Indeed, even where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be specifically directed at the alleged error.")); see also Farino v. Ercole, No. 07-CV-3592, 2009 WL 3232693, at *8-*9 (E.D.N.Y. Sept. 30, 2009). Here, petitioner did not renew his request for a trial order of dismissal on this point at the close of all of the proof. Accordingly, the appellate court found this claim to be unpreserved.

New York's preservation rule is "firmly established and regularly followed," and thus qualifies as an independent and adequate state law ground precluding federal habeas review. Garvey v. Duncan, 485 F.3d 709, 710 (2d Cir. 2007); see also Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999). Petitioner's claim is therefore procedurally barred pursuant to the adequate and independent state ground doctrine. Mills v. Poole, No. 06-CV-00842A, 2008 WL 2699394, *11 (W.D.N.Y.,June 30, 2008) (finding petitioner's legal sufficiency claim procedurally barred under the adequate and independent state ground doctrine where petitioner failed to renew his motion after he presented evidence). Once again, the petitioner has failed to demonstrate cause and prejudice to excuse this procedural default, and this claim is dismissed.

### 3.	Ineffective Assistance of Counsel

#### a.	Appellate Counsel (Ground Four)

Petitioner avers that his appellate counsel was ineffective for failing to raise the claim on appeal that his trial counsel was ineffective based on the latter's failure to argue a defense theory that petitioner killed the victim under extreme emotional disturbance or intoxication. Pet., Attach., ¶ 14. Petitioner raised this claim in a petition for writ of *error coram nobis* in state court, which was denied without opinion. See Appx. I; People v. Bryant, 43 A.D.3d 1454 (4th Dept. 2007).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under the "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 (1984). A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)), cert. denied, 508 U.S. 912 (1993).

To establish ineffective assistance of appellate counsel for failure to raise specific issues, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a

nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous that could be made. Id. Rather, counsel may winnow out weaker arguments on appeal and focus on one or two key issues that present "the most promising issue for review." Jones v. Barnes, 463 U.S. 745, 751-53 (1983). A habeas petitioner must demonstrate that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533. To establish prejudice for failing to raise an issue on direct appeal, a petitioner must show that there was a reasonable probability that the claim would have been successful before the state's highest court. Claudio, 832 F.2d at 803.

Petitioner has not demonstrated that his appellate counsel's choice to omit the ineffective assistance of trial counsel claim was objectively unreasonable or that he suffered prejudice as a result of his appellate counsel's omission. Indeed, petitioner's underlying contention that his trial counsel failed to request a jury charge on the affirmative defenses of extreme emotional disturbance and intoxication and failed to call an expert to explain an alleged interaction among his medication and consumption of alcohol, is plainly without merit. See 440.10 Mot. dated 4/28/2008 at 34-36.

Petitioner presented a defense of justification at trial. He did not testify that his behavior was affected by drugs or alcohol. Rather, he claimed that his wife was intoxicated, attacked him, and

he killed her while trying to defend himself. Under this defense theory, petitioner argued he was justified in his actions because he reasonably believed that deadly physical force was being used against him. T. 1265. His defense would have simply been diluted had he argued that petitioner was himself intoxicated as a result of a combination of drugs and alcohol, which he claims caused him to "lose control of himself" and resulted in "violent and fatal behavior." See 440.10 Mot. dated 4/28/2008 at 34-35. In fact, at his trial petitioner expressly denied attacking the victim. T. 1076-1078.

Similarly, although he now claims that he labored under a "sudden and uncontrollable rage . . . exasperated [sic] by his ingestion of medications not compatible with large amounts of alcohol," when he killed the victim, no such testimony was introduced at trial and thus counsel would have had no reason to request a jury charge on the affirmative defense of extreme emotional disturbance. As the 440.10 court pointed out, the introduction of expert testimony concerning the medications would have merely contradicted petitioner's own trial testimony. See Decision & Order, Ind. No. 846/01 dated 12/10/2008 at 9-11.

The crux of petitioner's argument appears to be that he is simply unhappy with the outcome of his chosen defense. The fact that counsel's chosen strategy was ultimately unsuccessful does not render an attorney's performance objectively unreasonable, however.

See Ramos v. Artuz, 40 F.Supp.2d 206, 208 (S.D.N.Y. 1999) ("[Petitioner] quarrels with his counsel's decisions not to, for example, request an accomplice corroboration instruction, request a circumstantial evidence charge and or to call various witnesses. While different strategic decisions could have been made, the ones that were made fell within the range of constitutional effectiveness. Even though counsel's strategy was ultimately unsuccessful, that fact does not render his assistance constitutionally ineffective.") (citing United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987) ("We will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed.") (citations omitted)). Because petitioner's underlying claim of ineffective of trial counsel is meritless, appellate counsel was under no obligation to raise the issue for direct appeal. See Aparicio v. Artuz, 269 F.3d 78, 100 (2d Cir. 2001).

Accordingly, the Appellate Division did not contravene Supreme Court precedent in denying petitioner's *coram nobis* application on the merits.

### b. Trial Counsel

Insofar as petitioner seeks to raise an additional ground for habeas relief alleging ineffective assistance of trial counsel on the basis of his defense counsel's failure to request additional jury charges and to call an expert to testify with respect to

petitioner's medications[4], I find that claim to be without merit for the reasons discussed above.

### 4. Coram Nobis Procedure (Ground Five)

Petitioner concludes his petition with the bare assertion that the "procedures utilized by the Appellate Division to decide Coram Nobis applications deprived [him] of Due Process." Pet., Attach., ¶ 14. Petitioner has not raised this claim in any state court proceeding, nor does he elaborate on how New York's procedure is unconstitutional.

Under 28 U.S.C. § 2254, a petitioner can file a federal habeas challenge to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has commented that "habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement." Preiser v. Rodriguez, 411 U.S. 475, 490 (1973). Petitioner has not set forth a legal or factual basis to support his argument that New York's *error coram nobis* procedure is unconstitutional, nor does he challenge the constitutionality of his conviction on that basis. This claim is therefore dismissed because petitioner has not set forth a ground for habeas relief.

---

[4] See Petitioner's Motion to Amend Habeas Petition, No. 08-CV-6103 (Dkt. #5) dated 5/29/2008.

## IV. Conclusion

For the reasons stated above, John L. Bryant's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    August 2, 2010
          Rochester, New York